# Illinois Official Reports

## Appellate Court

---

> ### *People v. Pizarro*, 2020 IL App (1st) 170651

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE PIZARRO, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-17-0651 |
| Filed<br>Rehearing denied | March 30, 2020<br>May 7, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CR-18057; the Hon. Mary Margaret Brosnahan, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Jonathan Krieger, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Justin R. Erb, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Griffin and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Jose Pizarro, was convicted *in absentia* of two counts of attempted aggravated criminal sexual assault and one count of aggravated criminal sexual abuse and was sentenced to concurrent prison terms of 15 and 7 years respectively. On appeal, he argues (1) the State failed prove him guilty beyond a reasonable doubt, (2) he is entitled to an additional 22 days of sentence credit, and (3) the mittimus should be corrected to reflect the correct charge of aggravated criminal sexual abuse. For the following reasons, we affirm his convictions under counts III and IV and remand to the trial court so that defendant may file a motion to correct sentencing issues.

¶ 2                                           BACKGROUND

¶ 3    Defendant was charged with 17 counts: 2 counts of aggravated kidnapping, 2 counts of attempted aggravated criminal sexual assault, 10 counts of aggravated criminal sexual abuse, 1 count of kidnapping, 1 count of aggravated battery, and 1 count of unlawful restraint of M.S., the 15-year-old victim. It was alleged that on July 1, 2005, defendant knowingly, and with the use of force, carried M.S. from one location to another against her will with the intent to sexually penetrate her and also made physical contact with M.S. for sexual gratification.

¶ 4    The day after the jury was selected and opening statements were made, defendant failed to appear in court despite having been admonished that he must appear on every court date or he may be tried and sentenced *in absentia*. After questioning Chicago police Detective Daniel McNally about his efforts to locate defendant and questioning defendant's live-in girlfriend, the court found defendant's absence to be willful and proceeded to trial in his absence.

¶ 5    The State proceeded to trial on two counts of aggravated kidnapping, two counts of attempted aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. The following evidence was adduced at trial in relevant part.

¶ 6    Cook County Assistant State's Attorney (ASA) Karin Sullivan testified that on July 1, 2005, she interviewed defendant, who was being held at the Chicago Police Department. After giving defendant the *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant agreed to make a handwritten statement, which was admitted into evidence.

¶ 7    In the statement, defendant admitted that on July 1, 2005, he parked and exited his car and walked east under the viaduct on 63rd Street in Chicago. He saw two young girls in front of him. One looked to be about 13 or 14 years old, and the other looked to be about 6 or 7. He walked fast so he could catch up with the older girl. When he caught up to her, he grabbed her by the shirt and pulled her up a hill toward some bushes. He then pulled the girl's shirt and bra off and grabbed her breast with his hands, which caused him to get an erection. Defendant tried to put his mouth on her breast but saw a group of men running at him. He tried to run to his car so he could get away, but the men caught up to him and pulled him out of the car. Defendant stated that if the men had not run toward him, he intended to have sex with M.S. in the bushes.

¶ 8    M.S. testified that on July 1, 2005, she was 15 years old. She and her 10-year-old sister were walking near the viaduct on 63rd Street when she noticed a brown pickup truck pull up. She saw a man exit the truck and follow them through the viaduct. M.S. and her sister were walking fast at first but then started to run. As they approached the end of the viaduct at Hamilton Street, defendant grabbed M.S. by the back of the shirt and dragged her up a nearby

hill. M.S. told her sister to run home and get their mom. When M.S. was halfway up the hill, defendant put his hand down M.S.'s shirt and touched her breast and then ripped her bra off and said, "let me see."

¶ 9       M.S. was crying and screaming for help. Defendant started to touch "the stomach part below" and unbuttoned her pants and put his hand down her pants. Defendant was only able to get to her "stomach part" before three men and two women came running toward her and defendant. Defendant stopped touching her and ran away from the group. The police came, and M.S. later saw defendant in handcuffs in a police car. She told the police that defendant tried to rape her.

¶ 10      M.S. sustained several scratches to the back of her arm and to the back of her neck from when defendant grabbed her, which she identified in photographs. She also identified a photograph of her torn-up bra.

¶ 11      M.S.'s sister, T.S., testified that she and M.S. were walking under the viaduct when defendant began to follow them. Defendant then grabbed M.S. T.S. ran home to tell her mother.

¶ 12      The men and women who came to M.S.'s aid also testified that they saw defendant pulling M.S. up the hill and subsequently ran after defendant, preventing him from leaving the scene.

¶ 13      Officer Azira testified that he and his partner were on patrol on July 1, 2005, when they were flagged down by a group of people near 63rd Street and Bell Avenue. Officer Azira spoke to M.S., who was visibly upset. Her clothes were "in disarray," and she stated that her shirt had been ripped off. M.S. had scratches on her arms and neck. M.S. identified defendant as the offender.

¶ 14      The State rested, and defense counsel called no witnesses. Defendant was convicted *in absentia* of both counts of attempted aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. The court sentenced defendant to 15 years' imprisonment for the attempted aggravated criminal sexual assault and a concurrent 7 years for aggravated criminal sexual abuse.

¶ 15      On September 23, 2016, 10 years later, after being arrested for a misdemeanor in Michigan, defendant returned to court and moved for a new trial or sentence. The court held a hearing on defendant's motion to determine whether defendant's absence from trial was willful pursuant to section 115-4.1(e) of the Code of Criminal Procedure (Code) (725 ILCS 5/115-4.1(e) (West 2016)), and defendant testified that he did not appear for trial because he "got really scared" and moved to Michigan. The parties stipulated that, if called to testify, court reporter Daisy Hent would testify that she was present when the court admonished defendant that, if he did not appear for trial, he would be tried *in absentia*. After the hearing, the court found that defendant's absence was willful and denied his motion for a new trial on January 20, 2017. The court denied defendant's motion for a new sentencing hearing on February 2, 2017. This appeal followed.

¶ 16                                                    ANALYSIS

¶ 17      Before we address the merits of defendant's argument, we must address the State's contention that this court lacks jurisdiction to consider defendant's argument challenging his attempted aggravated criminal sexual assault conviction. The State maintains that, because defendant did not appeal from the denial of his motion for a new trial or new sentencing hearing filed under section 115-4.1 (*id.* § 115-4.1), he cannot independently request review of the

judgment and sentence not vacated by the court. Since a reviewing court must first ascertain its jurisdiction before analyzing the merits of the appeal (see *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009)), we begin by addressing the State's jurisdiction arguments.

¶ 18 Generally, in criminal cases, a trial court loses subject-matter jurisdiction of the case 30 days after it imposes the defendant's sentence. *People v. Flaugher*, 396 Ill. App. 3d 673, 680 (2009). However, section 115-4.1 provides a mechanism for those defendants tried *in absentia* to request review of their conviction and sentence beyond the 30 days.

¶ 19 Section 115-4.1(e) of the Code provides:

"(e) When a defendant who in his absence has been *** both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence." 725 ILCS 5/115-4.1(e) (West 2016).

Section 115-4.1(g) of the Code states:

"A defendant whose motion under paragraph (e) for a new trial or new sentencing hearing has been denied may file a notice of appeal therefrom. Such notice may also include a request for review of the judgment and sentence not vacated by the trial court." *Id.* § 4.1(g).

¶ 20 Our supreme court has characterized section 115-4.1(e) as a collateral remedy that under the appropriate circumstances may be used to secure a review of the conviction. Thus, it is analogous to a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) or a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) and will support an appeal separate from a direct appeal of the underlying judgment. *People v. Partee*, 125 Ill. 2d 24, 35 (1988); see also *People v. Williams*, 274 Ill. App. 3d 793, 797-98 (1995) ("The legislature has engrafted the request for review of the conviction and sentence as a part of that appeal from the final order of the collateral proceeding. Accordingly, permitting that review as long as it is perfected within 30 days of the entry of the ruling on the section 115-4.1(e) motion is consistent with Supreme Court Rule 606(b).").

¶ 21 Section 115-4.1(g) provides that a defendant whose motion for a new trial or new sentencing hearing under section 115-4.1(e) has been denied may file a notice of appeal and that "[s]uch notice may also include a request for review of the judgment and sentence not vacated by the trial court." 725 ILCS 5/115-4.1(g) (West 2016). However, a defendant must request in his notice of appeal a review of the underlying judgment. Otherwise, "the notice of appeal would necessarily pertain only to issues relating to the order denying his section 115-4.1(e) motion ***, *i.e.*, whether his absence from court was without his fault and due to circumstances beyond his control." *People v. Pontillo*, 267 Ill. App. 3d 27, 33 (1994).

¶ 22 Defendant's notice of appeal indicates that he is appealing from his convictions for aggravated criminal sexual assault and criminal sexual abuse, but it listed his sentencing date as February 2, 2017, the date the trial court denied his motion for a new sentencing hearing. In his opening brief before this court, defendant suggests that this court has jurisdiction over his appeal under "article VI, section 6 of the Illinois Constitution, and Supreme Court Rules 603

- 4 -

and 606" and cites "725 ILCS 5/115-4.1(g) (allowing appeals following post-return hearing of defendant tried *in absentia*); *People v. Partee*, 125 Ill. 2d 24, 33-38 (1988) (finding jurisdiction under Rule 606 from conviction *in absentia*, even without post-return hearing)." In his brief, defendant argues that his "conviction for attempted aggravated criminal sexual assault must be reversed, because the State failed to prove [his] intent to commit an act of sexual penetration, as defined by statute." Defendant does not specifically mention his section 115-4.1(e) motion (725 ILCS 5/115-4.1(e) (West 2016)) in his opening brief or make any argument that the circuit court improperly denied the motion.

¶ 23    Although defendant's notice of appeal filed in this case is unsophisticated (defendant's attorney merely filled in the blanks of a standard form), defendant did file a timely notice of appeal from the denial of his section 115-4.1(e) motion and did indicate that he was appealing from the judgment of "guilty of two counts" of "aggravated criminal sexual abuse." Defendant clearly intended to "request" review of the underlying judgment and sentence not vacated by the court under section 115-4.1(e). Without such a request, the notice of appeal would pertain only to issues relating to the order denying his section 115-4.1(e) motion.

¶ 24    The State argues that we should follow *People v. Priest*, 345 Ill. App. 3d 660 (2003), and find that this court lacks jurisdiction to consider defendant's claims. In *Priest*, the defendant pled guilty to two counts of possession of a controlled substance but failed to return to court for sentencing and was sentenced *in absentia*. *Id.* at 662. Defense counsel filed a motion to withdraw defendant's guilty plea and a motion to reconsider the sentence. *Id.* at 663. The court did not rule on either motion. *Id.* The defendant returned to court several months later and filed a section 115-4.1(e) motion, which the trial court denied. *Id.* at 663-64. The defendant appealed and argued that the court should not have sentenced him *in absentia* and the trial court erred in denying his section 115-4.1(e) motion. *Id.* at 664.

¶ 25    This court found that it did not have jurisdiction over the defendant's direct appeal because Rule 606 requires that a defendant file a notice of appeal within 30 days of final judgment. *Id.* at 667. We stated:

"the language of section 115-4.1(g), if interpreted to allow a defendant to raise his direct appeal issues following the denial of a section 115-4.1(e) motion, would open the door for defendants to assert the merits of their direct appeal whenever they return to the jurisdiction of the trial court. This could conceivably be months or years after their direct appeal rights provided under the supreme court rules have been forfeited." *Id.*

¶ 26    We find that *Priest* is inapplicable to the facts of this case because in *Priest*, the defendant's notice of appeal identified the earlier sentencing judgment but not the later denial of his section 115-4.1(e) motion. The failure to appeal from the denial of his section 115-4.1(e) motion doomed Priest's attempt to obtain a direct appeal of his conviction and sentence. Here, Pizarro has filed a notice of appeal seeking appellate review of the denial of his section 115-4.1(e) motion and the review of his conviction and sentence on certain counts, which is authorized under section 115-4.1(g).

¶ 27    We also reject the State's reliance on *People v. Dupree*, 339 Ill. App. 3d 512 (2003),[1] to support its argument that section 115-4 is a legislative encroachment that violates the

---

[1]The *Dupree* decision lists Justice Cahill as "deliver[ing] the opinion of the court" but also lists no other justice joining it fully. See *Dupree*, 339 Ill. App. 3d 512. Justice Gordon specially concurred in

separation of powers by creating appellate jurisdiction where it otherwise would not exist. *Dupree* observed that *Partee* found that a section 115-4 motion is " 'more akin to a collateral attack on a judgment than it is to a procedural step in the direct appeal of that judgment' " and rejected the state's argument that the filing of a section 115-4.1(e) motion was a prerequisite to an appeal of a judgment *in absentia*. *Id.* at 516 (quoting *Partee*, 125 Ill. 2d at 35). *Dupree* then allowed the appeal of the conviction and sentence but indicated it would limit review of trial issues under section 115-4.1(g) to issues of fundamental fairness or violations of due process. *Id.* at 518-519. However, as the *Dupree* special concurrence (Gordon, J.) and dissent (Cousins, J.) persuasively argue, the clear language of section 115-4.1(g) provides for no such limitation. Because we have jurisdiction under section 115-4.1(g), we address defendant's arguments against his conviction and sentence on their merits.

¶ 28 Defendant argues that the State prosecuted him for two counts of attempted aggravated criminal sexual assault on the theory that he tried to commit an act of penetration with "an object." Defendant argues that there was no evidence to support this theory so his conviction on these two counts should be reversed outright. Defendant does not challenge his conviction for aggravated criminal sexual abuse.

¶ 29 When reviewing the sufficiency of the evidence in a criminal case, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Smith*, 185 Ill. 2d 532, 541 (1999). We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008). A reviewing court does not retry the defendant or substitute its judgment for that of the trier of fact with regards to the credibility of witnesses or the weight to be given to each witness's testimony. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Rather, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011).

¶ 30 Count III of the indictment charged defendant *inter alia* with attempted aggravated criminal sexual assault and alleged that defendant,

> "attempted an act of sexual penetration upon [M.S.], to wit: [he] touched [M.S.'s] breast and reached into her pants while pulling her away from the street, by the use of force or threat of force and Jose Pizarro Jr. caused bodily harm to [M.S.] to wit: scratches to [M.S.'s] body, which constituted a substantial step toward the commission of the offense of aggravated criminal sexual assault."

Count IV of the indictment alleged that defendant "attempted an act of sexual penetration upon [M.S.], to wit: [he] touched [M.S.'s] breast and reached into her pants while pulling her away from the street, by the use of force or threat of force" and that the criminal sexual assault was committed during the course of a kidnapping.

¶ 31 When defendant was indicted in 2005, a person committed the offense of aggravated criminal sexual assault when he commits an act of sexual penetration, uses force, and causes

the result but not in the reasoning, and Justice Cousins dissented. See *id.* at 522-26 (Gordon, J., specially concurring); *id.* at 526-29 (Cousins, J., dissenting).

bodily harm or commits the offense during the course of another felony. 720 ILCS 5/12-14(a)(4) (West 2004). "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." *Id.* § 8-4(a). The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances. *People v. Chambers*, 15 Ill. App. 3d 23, 27 (1973). The determination of whether defendant took a substantial step toward the commission of the offense may be determined by considering the surrounding circumstances. See *People v. Bonner*, 37 Ill. 2d 553, 562 (1967).

¶ 32    Sexual penetration is defined as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person." 720 ILCS 5/12-12(f) (West 2004). The jury in this case was instructed that sexual penetration is "any contact, however slight, between the sex organ or anus of one person and an object of another person."

¶ 33    In this case, the evidence showed that defendant intended to commit a sexual assault on M.S. where he exited his vehicle and followed M.S. and her sister under a viaduct. He forcibly dragged M.S. up a hill, ripped off her shirt, fondled her breast, and forced his hand down her pants, which caused him to get an erection. He also caused her bodily harm where he left scratches on M.S.'s body. Defendant admitted to ASA Sullivan that he intended to rape M.S. but that a group of people came to M.S.'s aid. This evidence was more than sufficient for the jury to conclude that defendant took a substantial step towards an act of sexual penetration upon M.S. and that he was proven guilty beyond a reasonable doubt of attempted aggravated criminal sexual assault in counts III and IV.

¶ 34    Defendant argues that the State's evidence was insufficient to convict him because his finger was not an object under the definition of sexual penetration provided to the jury based primarily on the State's closing argument that "the object of another person can be a finger." Defendant relies on *People v. Maggette*, 195 Ill. 2d 336, 347 (2001), where the defendant was charged with criminal sexual assault based on conduct where he placed the victim's hand on his penis and he rubbed the victim's vagina through her clothing. The issue before our supreme court was whether a hand or finger constituted an "object" under the definition of sexual penetration. In construing the statutory definition of sexual penetration, our supreme court interpreted the definition to encompass two broad categories of conduct. *Id.* at 346-47. The first category, the contact clause, included any contact between the sex organ or anus of one person and an object, sex organ, mouth, or anus of another person. *Id.* at 347. The second category, the intrusion clause, included any intrusion of any part of the body of one person or of any animal or object into the sex organ or anus of another person. *Id.* The supreme court held the word "object" in the contact clause was limited to inanimate objects, and hands or fingers were not objects. *Id.* at 349-50. Thus, *Maggette* limited the definition of sexual penetration with a hand or finger to situations where actual intrusion occurred, not mere contact.

¶ 35    As previously discussed, defendant was charged with attempted aggravated criminal sexual assault based on penetration. The State was not required to prove actual penetration. Instead, the State was only required to prove that defendant took a substantial step in committing the offense of aggravated criminal sexual assault. It is axiomatic that the prosecutor's argument in closing argument is not evidence and, given the charge was attempted aggravated criminal

sexual assault and that the jury was properly instructed on the essential elements of the offense, we find that *Maggette* is inapplicable here.

¶ 36 Accordingly, we affirm defendant's convictions for attempted aggravated criminal sexual assault under counts III and IV.

¶ 37 Defendant asks this court to correct his presentence custody credit and the mittimus, as it shows that defendant was convicted of the wrong count of aggravated criminal sexual abuse. This issue is governed by Illinois Supreme Court Rule 472 (eff. Mar. 1, 2019), which was adopted after defendant filed his brief. Rule 472 sets forth the procedure in criminal cases for correcting certain sentencing errors, including "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs"; "[e]rrors in the application of *per diem* credit against fines"; "[e]rrors in the calculation of presentence custody credit"; and "[c]lerical errors in the written sentencing order." Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). The rule provides that, in criminal cases, "the circuit court retains jurisdiction to correct" the enumerated errors "at any time following judgment ***, including during the pendency of an appeal." *Id.* Additionally, "[n]o appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule "unless such alleged error has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. Mar. 1, 2019).

¶ 38 More recently, our supreme court amended Rule 472 by adding paragraph (e) (Ill. S. Ct. R. 472(e) (eff. May 17, 2019)), which provides:

> "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule."

¶ 39 Defendant's appeal was pending on March 1, 2019. Thus, pursuant to the provisions of Rule 472, we remand to allow defendant the opportunity to move the circuit court to correct any sentencing errors.

¶ 40                                    CONCLUSION

¶ 41 Considering the foregoing, we affirm defendant's convictions under counts III and IV. We remand to the trial court to allow defendant the opportunity to file a motion to correct any sentencing errors.

¶ 42 Affirmed and remanded.