2021 IL App (1st) 190226-U

No. 1-19-0226

Order filed July 20, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 05774 |
| | ) | |
| HAROLD ZACHARY, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's convictions for predatory criminal sexual assault of a child are affirmed over his challenges to the State's proof of the *corpus delicti* and the trial court's admission of other-crimes evidence.

¶ 2     Following a bench trial, defendant Harold Zachary was found guilty of 2 counts of predatory criminal sexual assault of a child and was sentenced to 8 years' imprisonment on each count, to be served consecutively. On appeal, defendant contends his conviction for one count of predatory criminal sexual assault should be reversed where the only evidence of contact between

his penis and the victim's mouth came from his statement to detectives, in violation of the *corpus delicti* rule. Defendant also argues both his convictions should be reversed where the court erroneously admitted evidence of a sexual assault he committed six years prior to the assault in this case. We affirm.

¶ 3    Defendant was charged with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)), which alleged he was 17 years of age or older and knowingly committed acts of sexual penetration upon Z.N. by contact between his penis and Z.N.'s mouth, vagina, and anus when Z.N. was under 13 years of age. Two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b), (c)(1)(i) (West 2014)) alleged defendant was 17 years of age or older and knowingly committed an act of sexual conduct upon Z.N. by touching his penis to Z.N.'s buttocks for the purpose of sexual arousal or gratification when Z.N. was under 13 years of age and defendant was her uncle. As defendant only challenges the States' proof of the *corpus delicti* with respect to one count of predatory criminal sexual assault premised on contact between defendant's penis and Z.N.'s mouth and the trial court's admission of other-crimes evidence, we recite only those facts necessary to decide this appeal.

¶ 4    The State filed a pretrial motion to admit evidence of other crimes, which alleged that, in this case, defendant sexually assaulted his three-year-old niece Z.N. in a bedroom on March 7, 2015. A relative found defendant "with his pants down to his ankles, on the bed holding [Z.N.]'s leg up in the air. [Z.N.] was also naked from the waist down. Defendant was on top of [Z.N.] with his penis pressed against her vagina."

¶ 5       The other-crimes evidence pertained to defendant's 2009 sexual assault of eight-year-old A.K. when defendant was 13 years old.[1] The State alleged defendant's penis penetrated A.K.'s anus in a bedroom of a family home. Defendant was charged as a juvenile in connection with this incident.

¶ 6       The State maintained evidence of defendant's sexual assault of A.K. should be admitted because it occurred six years before defendant's assault of Z.N., and "[b]oth girls were attacked at family homes where the defendant had direct access to them," "defendant penetrated the girls with his penis," and "the girls were very young." The State submitted defendant's sexual assault of A.K. was "relevant to the issue[s] of his identity, motive, intent, common scheme or design; also as to the lack of consent and propensity." In response, defendant argued the age differences in the two cases made them too dissimilar; defendant was 14 when he assaulted 8-year-old A.K. and 19 when he assaulted 3-year-old Z.N. Defendant also contended the prejudice from admitting his assault of A.K. would be "extreme."

¶ 7       The court granted the State's motion. The court explained defendant's assault of A.K. "comport[ed] with the requirements of the statute regarding the proof of other crimes in these types of cases." In ruling, the court initially referred to "two other acts" but, after an off-the-record discussion, corrected itself to reflect the State only sought to admit one act.

_____

[1] The record is inconsistent regarding how old defendant and A.K. were at the time of the 2009 assault. The State's motion to admit other-crimes evidence alleged defendant was 13 and A.K. was 8. At trial, A.K. testified she was 7 at the time of this incident, which is consistent with her date of birth. Defendant's date of birth indicates he was either 13 or 14, depending on what date the incident occurred, which the record does not reflect.

¶ 8    At trial, Breana Zachary testified defendant, whom she identified in court, is her brother; his nickname is "Man-Man."[2] On the evening of March 6, 2015, Breana went to her mother's home for a birthday party. She and defendant, among other family members, spent the night after the party.

¶ 9    In the early morning hours of March 7, 2015, Breana saw Z.N. walking down the hallway and heard two doors close. Breana found that the guest bedroom door was locked, so she opened it with a knife and saw defendant "pressed against" Z.N. on the bed. Defendant was on his knees and Z.N. was on her back; both were naked from the waist down. Breana asked defendant what he was doing and he "fell to the floor" and "laid there like he was asleep" with his pants around his ankles. Breana testified defendant's penis was "unsoft," "soft," and "erect."

¶ 10    Breana picked up Z.N., who was crying and shaking, and Z.N. said defendant "was doing nasty stuff to [her]" and that "it hurt." Breana saw Z.N.'s vaginal area was "red." Breana took Z.N. to her mother and police were called shortly thereafter.

¶ 11    On cross-examination, Breana testified approximately 10 minutes passed between the time she saw Z.N. walk down the hallway and the time she opened the guest bedroom door. She did not hear anything as she was opening the guest bedroom door. "[T]here [were] two little babies" "laying across the bed" in the guest bedroom where defendant was kneeling on the bed with Z.N.

¶ 12    Ishema N. testified Z.N. is her daughter.[3] Defendant, whom Ishema identified in court, is her brother; his nickname is Man-Man.

---

[2] We refer to Breana Zachary by her first name as she has the same last name as defendant.

[3] We have omitted Ishema's last name to protect Z.N.'s privacy. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n. 1 (Illinois courts to refer to victims of sex offenses by initials to protect their privacy.)

¶ 13    On March 6, 2015, Ishema and her mother hosted a birthday party at their apartment, which defendant attended. At approximately 6:00 a.m. on March 7, 2015, Ishema's sister Breana woke her up and "told her what happened." Z.N. looked scared and told Ishema "what happened." Ishema called police and told them to bring an ambulance. Ishema and Z.N. went to Lurie Children's Hospital, where a sexual assault kit was administered to Z.N. Z.N. was three years old at the time.

¶ 14    On cross-examination, Ishema testified Z.N. said "he was doing nasty stuff to her" and "was on top of her."

¶ 15    Z.N. testified she was seven years old at the time of trial. Defendant, whom Z.N. knew as Man-Man, pulled down her pants, then pulled down his pants. Defendant "put his private in [hers]." Z.N. testified both girls' and boys' privates are in the "front" and are used "[t]o pee." Z.N.'s aunt Breana then entered the room.

¶ 16    On cross-examination, Z.N. testified she was not awake when this happened.

¶ 17    Shawntae Jones testified she was a forensic interview supervisor at the Chicago Children's Advocacy Center (CCAC). She interviewed Z.N. at CACC on March 7, 2015. The State moved into evidence a recording of this interview, which Jones confirmed accurately depicted her interview of Z.N.[4]

¶ 18    On the video recording, Z.N. states defendant did "nasty stuff" while "top on" her, which Z.N. demonstrates by thrusting her pelvis forward. Z.N. was wearing underwear; defendant was wearing "red clothes." Defendant "had a fork and cut [her] nose off" and "cut [her] neck off." Z.N.

---

[4] Prior to trial, the trial court granted the State's motion to admit Z.N.'s statement to Jones at CACC pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2014)).

states defendant "cut [her] mouth off with a spoon," and also states "Bootsy-Man" did that. Bootsy-Man is one of her mother's two brothers; the other brother is "Raheem." Defendant cut Z.N.'s crotch with "a big fork." He also "cut [her] butt" "with a butter knife" he got "from the police."

¶ 19 On cross-examination, Jones testified that, in an earlier interview, Z.N. stated defendant "cut her mouth off." She explained that if children "experience something as a stabbing or cutting sensation *** they approximate by describing something else that they know that could cut or stab." "[T]hey may say what was used to do that to them was a knife because that's what they conceive of as being able to make that sort of action." Z.N.'s nose, neck, and mouth had not actually been cut off.

¶ 20 Detective Vic Kubica testified he was on duty on March 7, 2015, and was assigned to investigate a criminal sexual assault. A sexual assault kit administered to Z.N. at Lurie Children's Hospital was inventoried and sent to a laboratory for testing.

¶ 21 Kubica interviewed defendant, whom he identified in court, at a police station with Detective Evans and Assistant State's Attorney (ASA) Foss on March 8, 2015. Defendant was 19 years old. The State moved a video recording of defendant's interview into evidence. Kubica confirmed this video recording accurately depicted his interview of defendant.

¶ 22 The video recording depicts Kubica and Evans interviewing defendant at a police station. Evans gives defendant *Miranda* warnings and defendant indicates he understands them. Defendant initially states he was asleep on the floor in a room with his own child and does not remember anything. After a break, defendant states he was drinking and "blacked out" the night prior but remembers going into the guest bedroom. Defendant's child, Z.N., and a third child were on a bed in the room.

¶ 23   Defendant thought Z.N. was his girlfriend and "touched her" "in a sexual way." Defendant "took her pants off," "g[o]t hard," and rubbed his penis on her while she was on the bed in front of him. Defendant put his penis in Z.N.'s mouth for "not that long" and did not ejaculate. Defendant then rubbed on the outside of Z.N.'s vagina and buttocks. He stopped because he realized Z.N. was his niece, not his girlfriend. Defendant's sister entered after he stopped touching Z.N., but did not say anything, then left.

¶ 24   ASA Foss introduces himself to defendant and provides *Miranda* warnings to defendant, who indicates he understands them. Defendant states his nickname is Man-Man.

¶ 25   The parties stipulated Illinois State Police forensic scientist Meredith Misker tested the sexual assault kit samples collected from Z.N. She found no semen on the oral swab.

¶ 26   A.K. testified she was 16 years old at the time of trial. Defendant, whom she identified in court, was her stepmother's brother and A.K. knew him as Man-Man. In August or September 2009, when A.K. was seven years old, she attended a party that defendant also attended. Defendant played hide-and-seek with children at the party and hid in a closet with A.K. and another child. Defendant pulled his and A.K.'s pants down, laid A.K. on the floor, and "put his penis on [her] butt, but he didn't penetrate [her]." Defendant put his penis "in the crack, [and] moved it up and down." A.K. told defendant that it hurt and asked him to stop, but he did not, so she bit him and ran out of the room. Several months later, A.K. told her brother and sister what happened. She eventually spoke to police.

¶ 27   Elaine Hall testified for the defense; defendant is her son and Z.N. is her granddaughter. At approximately 4:00 a.m. on March 7, 2015, she saw defendant fully clothed and asleep with his two or three-month-old child on a bed. At about 6:00 a.m., Hall's boyfriend woke her up and told

her people were saying defendant touched Ishema's child. Hall again found defendant fully clothed and asleep with his child.

¶ 28    The court found defendant guilty on all counts except the count of predatory criminal sexual assault of a child premised on contact between defendant's penis and Z.N.'s anus. In finding defendant guilty of predatory criminal sexual assault premised on contact between his penis and Z.N.'s mouth, the court explained "the defendant stated in his statement to the officers that he did place his penis into her mouth."

¶ 29    Defendant filed a motion for new trial, which argued, *inter alia*, the State failed to prove him guilty beyond a reasonable doubt where "defendant's video statement admitted into evidence which established the *corpus delicti* was inconsistent with and not sufficiently corroborated by other evidence." He also argued the court erred in admitting the other-crimes evidence because the age difference between defendant and A.K. was "not significant in that instance and that factor distinguishes it from this matter."

¶ 30    The court denied this motion. The court explained its guilty finding did not rely entirely upon defendant's statement; rather, defendant's statement "was corroborated *** by circumstantial evidence that was presented during the course of the [t]rial, coupled with the testimony of the victim." The court also stated it considered the other-crimes evidence "for propensity."

¶ 31    The court merged the aggravated criminal sexual assault counts into the two counts of predatory criminal sexual assault of a child premised on contact between defendant's penis and Z.N.'s vagina and mouth and sentenced defendant to 8 years' imprisonment on each count, to run consecutively.

¶ 32    On appeal, defendant challenges the State's proof of the *corpus delicti* with respect to his conviction for predatory criminal sexual assault of a child premised on contact between his penis and Z.N.'s mouth and the trial court's admission of his 2009 sexual assault of A.K.

¶ 33    Defendant first contends his conviction for predatory criminal sexual assault of a child premised on contact between his penis and Z.N.'s mouth should be reversed where the only evidence of contact between his penis and Z.N.s' mouth was his own statement to detectives, in violation of the *corpus delicti* rule.

¶ 34    This argument is essentially a challenge to the sufficiency of the evidence (*People v. Hurry*, 2013 IL App (3d) 100150-B, ¶ 11), so we review whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Pizarro*, 2020 IL App (1st) 170651, ¶ 29. We do not retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011). We will only reverse a conviction if the evidence is so improbable, unreasonable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98 (2008).

¶ 35    To prove defendant guilty of predatory criminal sexual assault of a child as charged, the State had to establish he was 17 years of age or older and committed an act of sexual penetration between his penis and Z.N.'s mouth when Z.N. was under 13 years of age. See 720 ILCS 5/11-1.40(a)(1) (West 2014). Sexual penetration is "any contact, however slight" between the sex organ of one person and, in this case, the mouth of another person. See 720 ILCS 5/11-0.1 (West 2014).

¶ 36    The State must prove two facts for all offenses: (1) that the crime occurred, *i.e.,* the *corpus delicti;* and (2) that the defendant committed that crime. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). A defendant's confession may be an integral part of the proof of the *corpus delicti*, but proof of the *corpus delicti* cannot rely exclusively on a defendant's confession. *Id.* "Where a defendant's confession is part of the proof of the *corpus delicti,* the prosecution must also adduce corroborating evidence independent of the defendant's own statement." *Id.* If the State fails to corroborate a defendant's confession, the defendant cannot be convicted. *Id.* However, the independent, corroborating evidence "need only *tend to show* the commission of a crime." (Emphasis in original.) *People v. Lara*, 2012 IL 112370, ¶ 18. It does not have to be so strong that it alone would prove the commission of the charged offense beyond a reasonable doubt. *Id.* The trier of fact has the responsibility to consider "a variety of evidence, some conflicting or unclear, addressing the *corpus delicti*." *Id.*, ¶ 46.

¶ 37    The State sufficiently proved the *corpus delicti* of predatory criminal sexual assault premised on contact between defendant's penis and Z.N.'s mouth. Defendant told Detectives Kubica and Evans he inserted his penis into Z.N.'s mouth. Z.N.'s statement at CCAC corroborated defendant's admission. Z.N. stated defendant did "nasty stuff" to her while on top of her, which she demonstrated by thrusting her hips forward. A reasonable factfinder could interpret this as three-year-old's Z.N.'s attempt to describe unfamiliar sexual behavior. Z.N. identified five areas of her body where defendant did this: her mouth, nose, neck, crotch, and buttocks. She consistently described defendant's actions in all areas as cutting with silverware, and she told Jones defendant cut her mouth specifically. Given Jones's testimony about how children use approximations to describe certain situations, a reasonable factfinder could conclude Z.N. was approximating the

sensation of defendant's erect penis rubbing against her mouth and surrounding area, as well as penetrating her mouth. Moreover, at trial, when Z.N. was seven years old, she was able to describe this "cutting" action as defendant putting his "private" in hers. Both defendant and Breana confirmed defendant's penis was erect. Viewed in the light most favorable to the State, Z.N.'s statement at CCAC corroborated defendant's admission his penis made contact with Z.N.'s mouth. Thus, the State proved the *corpus delicti* of the charged offense.

¶ 38    Defendant contends Z.N.'s statement at CCAC was "nonsensical" and "facially false." This argument is a challenge to Z.N.'s credibility, which we cannot review on appeal. See *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Moreover, there is no basis for interpreting Z.N.'s statements defendant assaulted her using silverware literally, as defendant suggests. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 32 (trier of fact is not required to search out all possible explanations consistent with a defendant's innocence and raise them to the level of reasonable doubt). That obviously did not occur, and the State has never alleged that it did.

¶ 39    Defendant also argues Jones did not explicitly ask Z.N. if defendant's penis made contact with her mouth. However, the State may prove the *corpus delicti* of an offense with circumstantial evidence and inferences, as it did in this case. See *Lara*, 2012 IL 112370, ¶ 33. Accordingly, we find the State sufficiently established the *corpus delicti* of predatory criminal sexual assault of a child premised on contact between defendant's penis and Z.N.'s mouth.

¶ 40    Defendant next argues we should reverse both of his convictions and remand for a new trial because the trial court abused its discretion in admitting other-crimes evidence.

¶ 41    In general, evidence of other crimes is inadmissible to show a defendant has the propensity to commit the charged criminal conduct. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). However,

other-crimes evidence is admissible to prove relevant facts other than propensity, such as motive, intent, identity, and absence of mistake. *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 37.

¶ 42    Section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2014)) expands the uses of other-crimes evidence when, as here, a defendant is charged with predatory criminal sexual assault of a child. 725 ILCS 5/115-7.3(a)(1) (West 2014); *People v. Ward*, 2011 IL 108690, ¶ 25. This section allows "courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses" if its probative value is not substantially outweighed by the danger of unfair prejudice. *Donoho*, 204 Ill. 2d at 176; 725 ILCS 5/115-7.3(b)-(c) (West 2014). "In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 115-7.3(c) (West 2014).

¶ 43    We will only reverse a trial court's decision to admit other-crimes evidence upon a showing of abuse of discretion. *Donoho*, 204 Ill. 2d at 182. A trial court abuses its discretion when its ruling is unreasonable, arbitrary, or fanciful, or if no reasonable person would adopt the court's view. *Id.*

¶ 44    Defendant contends the trial court abused its discretion because the two sexual assaults at issue were not similar enough to warrant admission under section 115-7.3.

¶ 45    Other-crimes evidence must have " 'some threshold similarity to the crime charged' " to be admissible. *Donoho*, 204 Ill. 2d at 184 (quoting *People v. Bartall*, 98 Ill. 2d 294, 310 (1983)). "[T]o show propensity, 'mere general areas of similarity will suffice to support admissibility.' " *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 23 (quoting *Donoho*, 204 Ill. 2d at 184). As factual

similarities increase, so does the probative value of the other-crimes evidence. *Donoho*, 204 Ill. 2d at 184.

¶ 46    The trial court did not abuse its discretion in admitting defendant's sexual assault of A.K. under section 115-7.3. Both incidents involved defendant sexually assaulting pre-pubescent girls who were related to him when he was a teenager. Both incidents occurred in family homes and in connection with family gatherings that provided defendant with access to his young relatives. In both incidents, defendant assaulted the victims in secluded areas: a closet and a locked guest bedroom. Defendant pulled his and the victims' pants down and placed his penis against their lower bodies. And, in both incidents, defendant assaulted the victims in the presence of other young children. Thus, the trial court properly admitted this evidence under section 115-7.3.

¶ 47    Defendant argues his assaults of Z.N. and A.K. were different because they "involved different locations on the girls' bodies," "occurred at different times of the day in different areas of the house," "the ages of the girls were very different," and "the offenses occurred many years apart." However, the existence of some differences between the prior offense and the charged offense does not defeat admissibility "because no two independent crimes are equal." *Id.* at 185. While defendant identifies some distinctions between the two assaults, they are not so dissimilar that no reasonable court would admit defendant's assault of A.K. under section 115-7.3. Thus, defendant has not shown the court abused its discretion.

¶ 48    Defendant also contends the trial court failed to "properly assess the probative value of the evidence and its prejudicial effect."

¶ 49    As noted above, section 115-7.3 requires the trial court to weigh the probative value of the other-crimes evidence against the risk of undue prejudice to the defendant. 725 ILCS 5/115-7.3(c)

(West 2014); *Donoho*, 204 Ill. 2d at 182-83. We presume the trial court knew and followed the law unless the record demonstrates otherwise. See *People v. Jordan*, 218 Ill. 2d 255, 269 (2006).

¶ 50    The record does not support a conclusion the trial court disregarded the law. The court concluded defendant's assault of A.K. "comport[ed] with the requirements" of section 115-7.3, one of which is that the danger of unfair prejudice does not outweigh the probative value of the other-crimes evidence. See 725 ILCS 5/115-7.3(c) (West 2014). Moreover, at the hearing on the State's motion to admit the other-crimes evidence, defendant argued the danger of prejudice to him was extreme. The trial court must have considered and rejected this argument given that it granted the State's motion shortly thereafter. Thus, the record supports a conclusion the court conducted the analysis section 115-7.3 requires.

¶ 51    Defendant argues the trial court "misapprehended the evidence at issue in the State's motion" because, at the beginning of its ruling, the court referred to two other-crimes acts instead of one. The record suggests the trial court merely misspoke, as it corrected itself and neither party addressed this issue thereafter. One isolated instance of the court misspeaking does not constitute an abuse of discretion. See *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 64. Accordingly, the trial court's admission of defendant's 2009 sexual assault of A.K. was not an abuse of discretion and does not warrant reversal of his convictions.

¶ 52    Finally, defendant contends the trial court's admission of other-crimes evidence was not harmless. The first step in harmless error analysis is to determine whether an error occurred, as there can be no harmless error without an error. *People v. Nash*, 2012 IL App (1st) 093233, ¶ 33. As explained above, we find no error in the trial court's admission of other-crimes evidence, so harmless error analysis does not apply. See *Id.*

¶ 53    For the foregoing reasons, we affirm defendant's convictions.

¶ 54    Affirmed.