THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL GOFF *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—96—0563, 1—96—1809 cons.

Opinion filed October 27, 1998.

Rita A. Fry, Public Defender (Murray M. Coffey, Assistant Public Defender, of counsel), and Gary Ravitz, of State Appellate Defender's Office, both of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustman, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

The trial court entered judgment on a jury verdict holding defendants, Michael and Rockmon Goff, guilty of murder. Defendants ask this court to reverse the convictions because the trial court denied their motion to reopen the case.

Around 7 p.m. on April 9, 1994, Officer Glenn Davis went to a Horizon food store in response to a call. He found Cesar Teague on the floor covered with blood. While paramedics tried, unsuccessfully, to revive Teague, Davis spoke to some people at the scene. He then went across the street to the parking lot of an Aldi's food store and to the adjacent alley, where he found 10 spent bullet shells. Police found no gun.

Laura and Sparkle Roberson, who were not on the scene when Davis arrived, came to the alley and told Davis that four boys, including defendants, shot Teague. Laura pointed to the apartment building where defendants lived. Davis went to the apartment and spoke to defendants' mother. At his request she went to find her sons. They walked back toward the apartment a few minutes later. Although they saw police they made no attempt to flee. When Davis called them, they walked straight to him. Police arrested them.

Teague died from three gunshot wounds. One bullet entered his midback, then coursed through the lung and heart before exiting the top of his chest. A second bullet entered through his buttocks and traveled slightly upwards before exiting from the lower abdomen. The third bullet went through his foot.

A grand jury indicted defendants for murder, based largely on the testimony of Laura and Sparkle. In answer to discovery prosecutors listed Christopher Green as a potential witness. Defendants named as potential witnesses all persons listed by prosecutors in answer to discovery.

Laura testified that in April 1994, when she was 11, she had known defendants from school for several months. They came over to Laura's home to visit almost every day. She also saw Teague frequently. On April 9, she and Sparkle met Teague and his nephews while they were

walking across Aldi's parking lot. Laura and Teague walked a little ahead, toward Teague's home. They saw defendants and two other boys coming toward them. Laura asked defendants what they were doing and one of the boys said, "We fixing to kill this hook." A "hook," in this context, meant a member of the Vice Lords gang. The four boys belonged to the rival Gangster Disciples. The boy specified he meant to kill the hook standing next to Laura. Laura answered, "He's not a hook. He ain't in a gang."

Teague grabbed Laura and they ran down the alley. She heard gunshots. Teague fell and she fell beside him. She looked around and saw all four boys with guns shooting at them. Defendants stood in the parking lot, shooting through a chain link fence, and the other two boys shot at them from the alley. Laura lay partly on Teague's chest while the boys stood about three feet away shooting. No bullets struck Laura.

After the boys ran away, Laura helped Teague up and propped him up so he could walk, leaning on her, to the Horizon, where he collapsed. Laura told the store clerks to call the police, and then she ran back home. Teague had not bled on Laura or her clothing. She returned to the alley a little later, where she talked to Davis and other officers.

On cross-examination defense counsel impeached Laura with her testimony before the grand jury. She told the grand jury that two of the boys cut through a yard to run in front of her and Teague, then they shot Teague in the stomach. At trial she swore the four boys shot from behind them, hitting Teague in the back. She explained that she misspoke when she testified, without cross-examination, before the grand jury. On redirect the court permitted Laura, over objection, to tell jurors that at a prior hearing in juvenile court, she testified that defendants and two other boys shot Teague after chasing him down the alley.

Laura's sister Sparkle corroborated part of her testimony. She saw Laura and Teague talking to defendants and the two other boys, then she saw them shooting at Teague. She ran behind the wall of Aldi's, so she saw no more. According to the transcript of her grand jury testimony, she then swore that she saw Teague fall, and she and Laura ran over to him and hugged him. At trial she denied having so falsely testified. She did not see Teague fall and she did not run over to him after the shooting. She ran home.

After both parties rested but before closing arguments, defense counsel sought leave to reopen to present the testimony of Green, who was present in court and immediately available. Defense counsel said,

in an offer of proof, that Green would testify his house abuts the alley behind Aldi's parking lot. He was on his porch when he heard shots around 7 p.m. on April 9, 1994. In the signed statement defendants presented, Green said he saw "young men *** chasing and shooting at Cesar Teagu[e]." The police, in their report, recorded his descriptions of the shooters. Police showed him a lineup which included defendants. The police report indicates that he did not identify the defendants as the shooters. Green said the defendants "were not the young men [he] saw in April of 1994 chasing and shooting at Cesar Teagu[e]." Defense counsel added that Green would testify that he saw no girl with or near Teague or running in the area.

The court found a discrepancy between the police report and the offer of proof because, according to the offer of proof, Green would not confine himself to saying he did not recognize defendants as the shooters; he would further assert that they were not the persons he saw shooting at Teague. The court held the testimony could "surprise" prosecutors, and they would not have an adequate opportunity to rebut Green because the police who interviewed Green were not immediately available to testify. The court refused to permit Green to testify.

On the evidence presented in open court, the jurors found defendants guilty of murder. The trial court denied the motion for new trial and sentenced Michael, who was 15 at the time of the shooting, to 40 years in prison. Rockmon, who was 14 when the crime occurred, received a sentence of 35 years in prison.

Defendants argue on appeal that the trial court abused its discretion by denying the motion to reopen to present the principal defense witness.

> "Though it is within the discretion of the trial court to determine the question of whether to grant a defendant's motion to reopen the proofs, a trial court should not exclude defense testimony except in the most extreme circumstances. *** Society's interest in the efficient administration of justice has to be balanced with a defendant's constitutional right to a fair opportunity to defend." *People v. Johnson*, 151 Ill. App. 3d 1049, 1053-54, 504 N.E.2d 178 (1987).

Green's testimony that he saw the perpetrators, and that defendants were not amongst them, is material to the case and may well have affected the outcome. See *People v. Outlaw*, 67 Ill. App. 3d 327, 331, 384 N.E.2d 898 (1978). As the court held in *People v. Fritz*, 84 Ill. 2d 72, 78, 417 N.E.2d 612 (1981), "a defendant may introduce the testimony of an occurrence witness that the witness did not see

the defendant at the time and place in question," to prove that he was not at that place.

■ Moreover, according to the offer of proof, Green would also have testified that he saw Teague run and fall, and he saw no girl with or near him. This testimony would substantially impeach Laura on the material issues of whether she was at the scene when some boys shot Teague and whether she saw the shooting. See *People v. Miller*, 101 Ill. App. 3d 55, 62, 427 N.E.2d 987 (1981) (testimony admissible to corroborate or impeach key witness on circumstances surrounding crime). The court's denial of the motion to reopen here assured that the jury would not hear probative evidence concerning the presence of defendants and the primary witness against them at the crime scene.

Reopening the case here would not have added even one day to the trial, as Green appeared in court, ready to testify, before closing arguments began. Although the court excluded Green because his testimony would unfairly "surprise" prosecutors, prosecutors admitted at trial that the presentation of Green would not violate discovery orders, and the record shows that prosecutors knew of defense efforts to produce Green, and the nature of Green's anticipated testimony, at least a day before closing arguments. In the brief on appeal the State made no mention of possible surprise. At oral argument the attorney conceded the State could have produced any necessary rebuttal witnesses.

This case presents no extreme circumstances that could justify exclusion of this exculpatory testimony. The trial court abused its discretion by denying the motion to reopen the proofs to permit the witness to testify. Accordingly, the convictions must be reversed.

■ The case may be remanded for retrial only if the prosecution presented, at the first trial, sufficient evidence to sustain a conviction beyond a reasonable doubt. *People v. Mink*, 141 Ill. 2d 163, 173-74, 565 N.E.2d 975 (1990). "[A] court of review must reverse a criminal conviction where the evidence and/or the credibility of the witnesses is so improbable or so unsatisfactory as to raise a reasonable doubt of guilt." *People v. Bailey*, 265 Ill. App. 3d 262, 271, 638 N.E.2d 192 (1994).

■ Only the testimony of Laura and Sparkle connects defendants to this crime. Laura's testimony seems implausible in several respects. Most notably, she testified that she lay on top of Teague while defendants shot at her from three feet away, yet no bullet hit her. Teague leaned on her as she helped him take his last steps, while he was dying from multiple gunshot wounds, but not a drop of blood fell on her or her clothes. Also, her testimony at trial contradicted her grand jury testimony, in which she specified that two of the boys ran

ahead of Teague then shot him from in front, hitting him in the stomach. The medical evidence unequivocally proved that no shot entered Teague's front.

The transcript of Sparkle's grand jury testimony also impeached her testimony at trial. However, Sparkle consistently testified to seeing defendants, with guns, near the crime scene at the time of the murder. We did not see or hear the testimony, so we are not in the best position to evaluate the credibility of this testimony. Despite the pervasive impeachment of the key witnesses, we find that a rational jury might find defendants guilty beyond a reasonable doubt on this evidence. Therefore, we remand for a new trial.

■ We expect the court on remand to avoid occasion for some of the errors of which defendants complain. The only issue we expect to recur is the matter of Laura's prior consistent statements.

" '[P]roof of statements made by a witness out of court harmonizing with his testimony is inadmissible, but where it is charged that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible.' " *People v. Powell*, 53 Ill. 2d 465, 474-75, 292 N.E.2d 409 (1973), quoting *Waller v. People*, 209 Ill. 284, 287 (1904).

■ The court here found the statements admissible to rebut an inference of fabrication. As the court held in *People v. Davis*, 130 Ill. App. 3d 41, 56-57, 473 N.E.2d 387 (1984):

"It is well settled that prior consistent statements are admissible only to rebut a *recent* fabrication or motivation to testify falsely. [Citation.] It is clear from the record in this case that, if the defense raised any inference, it was that the victim's story was fabricated from the very start \*\*\*. We therefore conclude that the prior consistent statements were not admissible for the claimed purpose." (Emphasis in original.)

See also *People v. Grisset*, 288 Ill. App. 3d 620, 627, 681 N.E.2d 1010 (1997).

Here, too, neither defendants nor prosecutors pointed to any incident, after the initial encounter with police, which gave Laura and Sparkle a new motive to fabricate testimony. While defendants may have invited the inference that the murderers, or members of their gang, told Laura and Sparkle what to tell police, the gang members would have told them what to say before they went to the crime scene to talk to police. Any motive to fabricate preceded the initial statements. As defendants did not raise a theory of recent fabrication, the prior consistent statements were not admissible for the claimed

purpose. Prior consistent statements prey upon the common inclination to believe that which is repeated most often (see *People v. Smith*, 139 Ill. App. 3d 21, 33, 486 N.E.2d 1347 (1985)), even where the statements logically prove only the unreliability of the witness (see *People v. DePoy*, 40 Ill. 2d 433, 439, 240 N.E.2d 616 (1968)). Thus, on retrial, the court must exclude evidence of Laura's or Sparkle's prior statements consistent with their testimony in court.

Because the trial court abused its discretion by denying defendants' motion to reopen to present their exculpatory witness, the case is reversed and remanded for a new trial in accordance with this order.

Reversed and remanded.

GORDON, P.J., and RAKOWSKI, J., concur.