2021 IL App (1st) 181247-U
No. 1-18-1247
Order filed June 1, 2021

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 19141 |
| | ) | |
| | ) | Honorable |
| LEWIS BASSET, | ) | Paul J. Nealis, |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm defendant's conviction for aggravated battery of a senior citizen and his sentence of seven years' imprisonment over his contentions that the court erred in denying his motion to reopen the proofs and that his sentence was excessive.

¶ 2    After being tried in 2005 by a jury *in absentia*, Lewis Basset was convicted of aggravated battery of a senior citizen (720 ILCS 5/12-4.6(a) (West 2004)) and sentenced to seven years' imprisonment. On appeal, Basset contends that the trial court erred in denying his request to reopen the proofs to call a defense witness. He also claims that his sentence is excessive.

¶ 3    We affirm.

¶ 4                              Background

¶ 5    An indictment charged Basset with one count of aggravated battery to a senior citizen (count I) and one count of aggravated battery causing great bodily harm (count II) for a July 2004 incident involving Mark Stricker, the victim. The State elected to proceed on count I and nol-prossed count II.

¶ 6    In August 2004, the trial court admonished Basset that he could be tried and sentenced *in absentia* if he failed to appear for court dates. After he failed to appear in court in April 2005, a warrant was issued for Basset's arrest. Basset did not respond to attempts to contact him, and the matter proceeded to a jury trial in September 2005 before Judge Paul J. Nealis.

¶ 7    In its opening statement, defense counsel suggested to the jury that it would hear evidence that Basset and Stricker got into an argument that escalated into a fight. Specifically, counsel argued that Basset did not start the fight, but was walking down the street and came across Stricker, who yelled something at Basset. The men then began to argue. Stricker grabbed Basset's beard, and "at some point blows [were] exchanged," and both men were injured.

¶ 8    Stricker testified that he was 69 years old and served as the mayor of Matteson. Basset's grandparents and Basset had lived directly across the street from the Strickers' home for many years.

¶ 9    At 9:15 p.m. on July 17, 2004, Stricker, at home, heard a "commotion" in the street. His wife was outside on the corner watering flowers, so he walked onto his porch to check on her. In the parkway area between Basset's home and the neighboring residence, Stricker saw some people "yelling and screaming and some chasing around." Basset then came from across the street and yelled and cursed at Stricker. Basset stood at the curb in front of Stricker's home and verbally

assaulted Stricker, telling him "it was none of [Stricker's] business." Stricker responded to Basset's remarks and walked down to the sidewalk. Stricker turned and walked toward his wife, who was still on the corner. Basset followed Stricker and "got right up in [Stricker's] face."

¶ 10 Stricker recalled that Basset's grandmother opened the door and told Basset to come back to their home. Basset initially turned toward his grandmother but then punched Stricker in the face. Stricker was "knocked out" and did not remember what happened next, but he felt someone on top of him. Stricker recalled that when he was on the ground, "my body kind of got punched around and my leg, the hip area was * * * I knew something was seriously wrong."

¶ 11 Stricker was transported to the emergency room. Two days later, he had surgery to replace his upper femur with a metal rod. He remained hospitalized until July 31, 2004. After returning home, he had "homebound therapy" for five weeks and outpatient therapy until November 2004. Stricker continued to experience hip pain at the time of trial, and could not take long walks. He said the injury was a "severe limitation." Stricker identified photographs of himself in the hospital, showing an injury to the left side of his face, a scrape on his right elbow, and his right leg after surgery.

¶ 12 Stricker's wife, Charlette Stricker (Charlette) testified that she was watering flowers outside her home when she noticed several young adults arguing across the street. Her husband came out onto the front porch, after which Basset approached and argued with Stricker. Basset continued talking as Stricker began to walk toward Charlette. She noticed Basset's grandmother emerge from the house across the street, and Stricker "told her to tell [Basset] to come home." Basset punched Stricker in the jaw, causing him to fall to the ground. Basset turned and went to the middle of the street but then came back and kicked and hit Stricker, still on the ground. Her husband never placed a hand on Basset.

¶ 13    After the State rested, the trial court asked defense counsel if it wished to present any witnesses, leading to the following exchange:

THE COURT: Do you have any witnesses to call?

[DEFENSE COUNSEL]: Your Honor, the defendant is going to have to try to call…

THE COURT: Call your witness. These jurors are going home at five o'clock. And the State may have [a] rebuttal witness they said. Who is unavailable tomorrow. I told everybody. You call your witness right now and do whatever you have to do. I will give you until 4:30 to get your witness to the stand, that is it.

The Court is in recess to 4:30.

(A short recess was had.).

THE COURT: Are you ready?

DEFENSE COUNSEL: Yes.

THE COURT: State you rested. Do you have any witnesses to call?

DEFENSE COUNSEL: No, Judge. Well, the defendant was going to call Mildred Knight who was available here but we are unable to locate[] her[] as of right now.

The defendant is going to, respectfully, ask for a continuance for time to bring i[n] Ms. Knight to testify. She was in court.

THE COURT: That is denied."

The defense rested after the trial court denied the request for a continuance. The court then adjourned for the day.

¶ 14    The following day, defense counsel informed the court that Knight was available and requested that the case be reopened, but the court denied that request:

> [DEFENSE COUNSEL]: At the end of yesterday at approximately, about four o'clock, the Judge asked if defendant was ready to proceed on their case. Defense's witness was present earlier in the day, * * * but she did not find out until the Judge asked her to speak to that client if she was still present * * * defense sent out an investigator to pick the witness up to testify * * *. The witness was not home at that time * * * so defense rested.
>
> Your Honor, the defense is going to respectfully ask that the witness is available this morning and ask that if the defense is able to reopen the case to be able to present this witness."
>
> [STATE'S ATTORNEY]: For the record, we had a rebuttal witness we informed the Court it would be a hardship for at that time which to leave, if push came to shove, we had to have this here. Since we released our rebuttal witness and to allow the defense to call their witness -
>
> THE COURT: "Motion denied, you rested, and that is it."

¶ 15    The jury found Basset guilty of aggravated battery to a senior citizen.

¶ 16    Defense counsel filed a written motion for a new trial, which the trial court denied. (A copy of the motion is not included in the record on appeal.)

¶ 17    Basset's presentence investigation report (PSI) reflected that he was born in 1975 and was a high school graduate. Basset had no juvenile court record or any criminal convictions. The PSI related that Basset had not been formally employed since April 2004 but worked "informally" for his mother's house cleaning business.

¶ 18 In aggravation, the State submitted a victim impact statement. Stricker said he endured "a lot of physical pain" during rehabilitation and therapy for four months following surgery to repair his hip and femur. He still suffered pain and inconveniences in daily life. He could not walk more than a block without "muscles tightening up" and needed assistance to put socks and shoes on his right foot. He also had difficulty getting in and getting out of his car. Stricker described "emotional challenges" and concern that the hip injury could aggravate pre-existing heart problems. He feared that he could "have a heart attack over the anguish, pain, and aggravation caused by this brutal attack." Stricker said that he would "be suffering the consequences of this attack for the rest of my life" and requested that Basset receive "the most severe penalty under the law."

¶ 19 The State argued that the incident was a "life-altering event" for Stricker. In mitigation, defense counsel acknowledged the victim impact statement but remarked that Stricker maintained his position as mayor and "has not been relieved of any of his duties since the date of this incident."

¶ 20 In announcing sentence, the court noted that it considered the nature of the charge and listened to the testimony "attentively." The court said that it reviewed Basset's background and said that "albeit there is not a substantial * * * or any criminal history at all conviction-wise, this [] was a barbaric act that he did unprovoked to a senior citizen, and not only did he knock him down, but he then kicked him and stomped him." He also said that Stricker sustained "very life-altering injuries." He added:

> "This victim is walking with a very, very noticeable gait, and this defendant was totally unprovoked * * * and he thumbs his nose at the Court as well, but even so, that is why we have a special, special category of crimes for senior citizens where special people in our society are protected * * * *."

The court proceeded to sentence Basset to seven years' imprisonment. Basset did not file a notice of appeal.

¶ 21    In December 2017, Basset was arrested. The next month, the trial court (Judge Michele Pitman) addressed Basset and confirmed his understanding that he had been convicted and sentenced *in absentia*. The trial court reappointed the Public Defender to represent Basset.

¶ 22    On March 23, 2018, Basset filed a *pro se* letter with the court, which was not labeled as a motion but contained a request for a "lower number of years." In that letter, Basset claimed that he acted in self-defense after being attacked by Stricker and did not intend to hurt him. Basset described himself as a community and political activist and Stricker as a political opponent. Basset suggested several reasons why he did not appear in court for trial:

> "As to why it's been so many years there are many reasons. The mayor [Stricker] held many, many positions in Cook County and the south suburbs, but my change of venue was denied. Not one of my witnesses were allowed to testify in my defense. * * * I didn't stand a chance in court against a politically connected lifetime politician. This took place in a[n] election year, and this was a politically motivated case. The police approached me off-duty and told me I would never make it to trial and threatened me so, I ran because I was scared for my life and my families [sic] lives.
>
> In retrospect, I should have went to court, but I didn't stand a chance and I was young and dumb."

¶ 23    In the letter, Basset also said he had been a productive member of society, took part in political and charitable activities, and was a responsible "head of the house" with three children. He asked the court not to take him "away from [his] family for a long time."

¶ 24    At a March 23, 2018 hearing, defense counsel referenced the *pro se* letter (noting she had first seen it that day) and requested to "at least try to make some kind of record on behalf of" Basset. Counsel orally asked the court reduce the sentence, noting Basset's claim that he had been afraid to come to court for his trial due to Stricker's status as mayor. Counsel also pointed to Basset having had no convictions and no arrest "in these last 13 years while this warrant has been outstanding." Counsel suggested that, in imposing the maximum sentence, the trial judge imposed a "punitive sentence because [Basset] was not present." Counsel argued that Basset was much younger and a "hot head," and now he was age 42 and a father of three children.

¶ 25    In response, the State argued that it was inappropriate to consider a new sentence:

> "[T]his defendant was charged with a serious crime * * * . The defendant failed to appear on his jury trial date, and in his letter he admits that he fled. * * * He claims he was afraid, but that's not the issue. The issue is, he was tried *in absentia*.
>
> And when a defendant, who in his absence has either been convicted or sentenced or both, appears before the Court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. That is not the issue here, and you know that based on the defendant's admission in his letter that he fled."

The State argued "this is not the time to try and argue for a new sentencing hearing" and that the court should "simply impose the sentence that was actually given" in 2005.

¶ 26    After argument, the court noted that the original trial judge had reviewed the PSI and heard counsel's argument at trial. The court concluded that there was no reason not to impose the same

sentence imposed in 2005, where "defendant absent[ed] himself willfully from this court and these proceedings." The court thus denied Basset's motion for "new sentence or a reduction of sentence," stating: "[t]he sentence imposed by Judge Nealis from October 28, 2005, is going to stand as well, which is seven years of incarceration."

¶ 27    On March 23, 2018, the trial court entered a criminal disposition sheet reflecting that Basset's "oral motion for new sentence [is] denied." On March 26, 2018, Basset's counsel filed a notice of appeal, specifying the dates of the orders appealed from as "September 15, 2005/Sentenced April [sic] 23, 2018," the latter date referencing the March 23, 2018 order. The March 26, 2018 notice of appeal was assigned appeal number 1-18-0667.

¶ 28    On April 18, 2018, Basset filed a *pro se* motion for reduction of sentence. On May 2, 2018, the trial court denied that motion. Basset filed a notice of appeal that identified May 2, 2018, as the date of judgment that he wished to appeal. That notice of appeal was assigned appeal no. 1-18-1247. In December 2019, Basset filed a motion to dismiss appeal no. 1-18-0667, as it was "a duplicate of assigned appeal number 1-18-1247." This court allowed that motion on January 6, 2020.

¶ 29    In September 2020, Basset filed a motion to amend his notice of appeal to indicate that the judgments being appealed "are his conviction *in absentia* on September 16, 2005, his sentencing *in absentia* on October 28, 2005, and the denial of his post-sentencing motion under 725 ILCS 5/115-4.1(e) on March 23, 2018." On September 15, 2020, this court entered an order allowing the motion.

¶ 30                            Analysis

¶ 31    On appeal, Basset asserts error concerning his 2005 trial and sentence. First, he claims that the trial court erred in denying his request to reopen the proofs to allow his counsel to present a

defense witness. He otherwise claims that the trial court's imposition of the maximum seven-year sentence constituted an abuse of discretion. Notably, although his notice of appeal (as amended) references the March 23, 2018 ruling, his appellate briefing does not include any argument challenging that ruling.

¶ 32                                                *Issue of Jurisdiction*

¶ 33     Before we address the merits of Basset's contention, we have an independent duty to consider our jurisdiction. *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009). Basset asserts that we have jurisdiction to consider his challenges to the 2005 conviction and sentence by operation of Supreme Court Rule 606, as well as section 115-4.1(e) and (g) of the Code of Criminal Procedure (Code). 725 ILCS 5/115-4.1 (West 2016).

¶ 34     Rule 606(b) provides that: "Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the circuit court within 30 days after entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." Ill. S. Ct. R. 606(b) (eff. July 1, 2017). Basset acknowledges that he did *not* file a notice of appeal within 30 days of the imposition of sentence in 2005. If those were the only proceedings, then we would lack jurisdiction. But, our jurisdictional analysis does not end there. Given that Basset was tried and sentenced *in absentia* under section 115-4.1 of the Code, Section 115-4.1(e) allows Basset to file a motion on his return:

> "When a defendant who in his absence has been * * * both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing

> hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence." 725 ILCS 5/115-4.1(e) (West 2016).

Further, section 115-4.1(g) provides for an appeal from the motion's denial:

> "A defendant whose motion under paragraph (e) for a new trial or new sentencing hearing has been denied may file a notice of appeal therefrom. *Such notice may also include a request for review of the judgment and sentence not vacated by the trial court*." (Emphasis added.) 725 ILCS 5/115-4.1(g) (West 2016).

¶ 35 This court has interpreted the last sentence of section 115-4.1(g) as permitting appellate review of the underlying judgment and sentence, in conjunction with an appeal from the denial of a section 115-4.1(e) motion:

> "Our supreme court has characterized section 115-4.1(e) as a collateral remedy that under the appropriate circumstances may be used to secure a review of the conviction. Thus, it is analogous to a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) or a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016) *and will support an appeal separate from a direct appeal of the underlying judgment*." (Emphasis added.)

*People v. Pizarro*, 2020 IL App (1st) 170651, ¶ 20 (citing *People v. Partee,* 125 Ill. 2d 24, 35 (1988)).

¶ 36 Our jurisdiction over Basset's appeal depends on interpretation of the March 23, 2018 ruling as a denial of a section 115-4.1(e) motion, which in turn implicates section 115-4.1(g). Basset contends that under section 115-4.1(g), we have jurisdiction to consider his challenges to

the original 2005 conviction and sentence. He points out (i) he filed a timely notice of appeal from the March 23, 2018 denial of his section 115-4.1(e) motion and (ii) his notice of appeal, as amended, "include[s] a request for review of the judgment and sentence not vacated by the trial court" since it indicated his intent to challenge the 2005 conviction and sentence. 725 ILCS 5/115-4.1(g) (West 2016). He asserts that this affords us jurisdiction to consider his arguments regarding the 2005 trial and sentence.

¶ 37    The State disputes that section 115-4.1(g) applies and argues we lack jurisdiction because Basset did not file a timely notice of appeal after his conviction and sentence in 2005. The State's brief suggests alternative theories as to why section 115-4.1 is inapplicable. First, the State suggests that "defendant did not file a motion under [section 115-4.1(e)] seeking to excuse his absence from trial" but "only asked the trial court to reconsider his sentence." Thus, the State initially suggests that there was no motion under section 115-4.1(e) that could implicate an appeal under section 115-4.1(g). The State elsewhere suggests that, even assuming the court's March 23, 2018 order was tantamount to denial of a section 115-4.1(e) motion, section 115-4.1(g) cannot provide jurisdiction without running afoul of Rule 606 and this court's reasoning in *People v. Priest*, 345 Ill. App. 3d 660 (2003).

¶ 38    We first address the threshold question of whether the trial court's March 2018 order was, in effect, a denial of a motion under section 115-4.1(e). We recognize that Basset's March 2018 letter to the court was not called a motion or cite section 115-4.1(e) or any statute. But we consider the substance rather than the label in deciding how to characterize a submission. See, *e.g.*, *People v. Shellstrom*, 216 Ill. 2d 45 (2005) (trial court authorized to recharacterize as postconviction petition *pro se* submission labeled as motion to reduce sentence); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) ("Regardless of the label which the Board gave to its motion,

the motion was, in substance, a section 2-1401 motion. [Citations]"); *Padilla v. Vazquez*, 223 Ill. App. 3d 1018, 354-55 (1991) ("In analyzing a pleading, a court of review will look to the content of the pleading rather than its label. [Citation.]").

¶ 39    Here, the substance of Basset's March 2018 *pro se* letter included assertions offered to explain his absence from trial, including that he had been threatened and that he was scared for his life and the lives of his family members. Basset also requested a more lenient sentence based on his purported good character, acts of community service, his role as a father to three children, and lack of other criminal history. Keeping in mind Basset's *pro se* status, we conclude the letter constitutes a motion for new sentencing hearing under section 115-4.1(e).

¶ 40    In support of this conclusion, the record shows that the State and the court treated Basset's *pro se* filing as a section 115-4.1(e) motion. Indeed, in opposing the motion, the State referenced the statutory language of section 115-4.1(e) in arguing that Basset was at fault for his absence at trial. Finally, the court's remarks in its ruling indicate that it considered whether, under section 115-4.1(e), Basset's absence had been "without his fault and due to circumstances beyond his control." See 725 ILCS 5/115-4.1(e) (West 2016). The court found that Basset had "absent[ed] himself willfully from this court and these proceedings" before stating that the "oral motion for new sentence or a reduction of sentence is going to be denied." We thus construe the trial court's March 2018 ruling as a denial of a motion for a new sentencing hearing under section 115-4.1(e).

¶ 41    Section 115-4.1(g) provides that a defendant whose motion under section 115-4.1(e) has been denied may file a notice of appeal and that "[s]uch notice may also include a request for review of the judgment and sentence not vacated by the trial court." 725 ILCS 5/115-4.1(g) (West 2016). The notice of appeal in this case (as amended with leave of this court) meets this requirement, as it explicitly appeals from Basset's conviction *in absentia* on September 16, 2005,

and his sentencing *in absentia* on October 28, 2005, in addition to the March 23, 2018 denial of his section 115-4.1(e) motion. (The separate notice of appeal filed March 26, 2018, which identified the orders appealed from as "September 15, 2005/Sentenced April [sic] 23, 2018," likewise expressed defendant's intent to challenge both underlying judgment in 2005 as well as the March 23, 2018 denial of the section 115-4.1(e) motion. But, that notice of appeal (no. 1-18-0667) was dismissed on defendant's motion as duplicative of this appeal.)

¶ 42    Next, under section 115-4.1(g), do we have jurisdiction to review purported errors in Basset's underlying conviction and sentence from 2005? Basset argues, and we agree, the procedurally analogous decision in *People v. Pizarro*, 2020 IL App (1st) 170651 resolves this question. The *Pizarro* defendant was tried and sentenced *in absentia* on counts of attempted aggravated criminal sexual assault and aggravated criminal sexual abuse. *Id.* ¶ 14. Ten years later, after his arrest in Michigan and return to Illinois, defendant moved for a new trial or sentence. *Id.* ¶ 15. After conducting a hearing under section 115-4.1(e) of the Code, the circuit court determined that the defendant's absence was willful and denied his motions for a new trial or sentencing hearing. *Id.*

¶ 43    On appeal, the *Pizarro* defendant argued that the State failed to prove his guilt of attempted aggravated criminal sexual assault. *Id.* ¶ 22. The defendant's opening brief did *not* make any argument that his section 115-4.1(e) motion was improperly denied. *Id.* The State contested jurisdiction, but this court found jurisdiction under section 115-4.1(g), since the notice of appeal included a request for review of the underlying conviction:

> "Although defendant's notice of appeal filed in this case is unsophisticated
> (defendant's attorney merely filled in the blanks of a standard form), defendant did
> file a timely notice of appeal from the denial of his section 115-4.1(e) motion and

did indicate that he was appealing from the judgment of 'guilty of two counts' of 'aggravated criminal sexual abuse.' Defendant clearly intended to 'request' review of the underlying judgment and sentence not vacated by the court under section 115-4.1(e). Without such a request, the notice of appeal would pertain only to issues relating to the order denying his section 115-4.1(e) motion." *Id.* ¶ 23.

¶ 44 We find *Pizarro* persuasive, as the procedural posture in *Pizarro* is very similar to the instant case. Here, as in *Pizarro*, (i) Basset did not file a notice of appeal within 30 days of the original imposition of sentence; (ii) after returning to the jurisdiction years later, Basset's motion under section 115-4.1(e) was denied; and (iii) Basset filed a notice of appeal under section 115-4.1(g) indicating he appealed from the underlying conviction and sentence in addition to denial of the section 115-4.1(e) motion. Moreover, as in this case, the *Pizarro* defendant's appellate brief did *not* argue that the court erred in denying the section 115-4.1(e) motion. Nevertheless, our court determined in *Pizarro* that we had jurisdiction to review the underlying conviction. We see no compelling distinction to depart from the conclusion in that recent opinion.

¶ 45 In arguing against jurisdiction, the State relies heavily on *People v. Priest*, 345 Ill. App. 3d 660 (2003). However, in *Pizarro*, our court expressly distinguished that decision. In *Priest*, the defendant pled guilty and was sentenced *in absentia* when he failed to attend his sentencing hearing. *Id.* at 663. Defense counsel filed a motion to withdraw the guilty plea and a motion to reconsider the sentence, but the trial court did not rule on those motions. *Id.* Several months later, defendant filed a motion for a new sentencing hearing under section 115-4.1(e), which was denied. *Id.* at 664. On appeal, the defendant argued that the trial court erred in sentencing him *in absentia* and that the court erred in denying his motion for a new sentencing hearing. *Id.* Notably, the *Priest* defendant's notice of appeal "state[d] that he is appealing the April 23, 2001, sentence and

judgment of guilty" but did not reference the denial of defendant's section 115-4.1(e) motion. *Id.* at 664.

¶ 46    The *Priest* court held that we lacked jurisdiction to review the underlying conviction and sentence. The *Priest* decision recognized that section 115-4.1(g) states that an appeal from denial of a section 115-4.1(e) motion "may include a request for review of the judgment and sentence not vacated by the trial court" (725 ILCS 5/115-4.1(g) (West 2000)), but determined:

> "This language does not allow this court to assert jurisdiction over defendant's direct appeal. Such an interpretation would create a conflict between the language of the statute and Supreme Court Rule 606 [citation.]. This conflict would violate the separation of powers doctrine of the Illinois Constitution and would render section 115-4.1(g) unconstitutional.
>
> Rule 606 provides that in order to perfect an appeal, a defendant must file a notice of appeal within 30 days of the entry of the final judgment * * * . However, the language of section 115-4.1(g), if interpreted to allow a defendant to raise his direct appeal issues following the denial of a section 115-4.1(e) motion, would open the door for defendants to assert the merits of their direct appeal whenever they return to the jurisdiction of the trial court. This could conceivably be months or years after their direct appeal rights provided under the supreme court rules have been forfeited." *Priest*, 345 Ill. App. 3d at 667.

Our court in *Priest* concluded that the defendant could not use the denial of his section 115-4.1(e) motion "to maneuver around the supreme court rules dictating his appeal rights" to obtain review of the underlying conviction and sentence. *Id.* at 668.

¶ 47    The State urges that, as in *Priest*, we should conclude that section 115-4.1(g) cannot afford jurisdiction to review Basset's underlying conviction and sentence. Yet, in *Pizarro*, we rejected a similar attempt by the State to rely on *Priest* to challenge jurisdiction. *Pizarro*, 2020 IL App (1st) 170651, ¶ 26. (In *Priest,* failure to appeal from denial of section 115-4.1(e) motion doomed Priest's attempt to obtain a direct appeal, but Pizarro filed "notice of appeal seeking appellate review of the denial of his section 115-4.1(e) motion and the review of his conviction and sentence on certain counts, which is authorized under section 115-4.1(g).").

¶ 48    We follow our decision in *Pizarro* and reject the State's reliance on *Priest.* We are not persuaded by the State's attempt to distinguish *Pizarro*. The State suggests that *Pizarro* should not control because the defendant's notice of appeal "expressly sought 'appellate review of the denial of his section 115-4.1(e) motion' in addition to review of claims relating to the trial and sentencing hearing." The State argues that, in contrast, Basset's appellate counsel "simply filed a motion to amend the notice of appeal to include the [March 2018] date on which his request to reconsider his sentence was denied." The State argues that counsel's action "is precisely the sort of end-around of Supreme Court Rule 606 that this court prohibited in *Priest*." The State cites no authority to suggest that the contents of a notice of appeal should be given less credence for purposes of section 115-4.1(g), where counsel's motion amends the notice of appeal. Consistent with *Pizarro*, we conclude that we have jurisdiction and turn to the merits of the appeal.

¶ 49                                   *Issue of Reopening Proof*

¶ 50    On appeal, Basset first contends that the court erred in declining his counsel's request to reopen the proofs to call Mildred Knight, his grandmother, as a witness. He claims this ruling precluded his counsel from presenting evidence to fulfill counsel's promise to the jury in the opening argument that they would hear testimony countering the State's case. He avers that "any

inconvenience to the State from having to reschedule its rebuttal witness paled in comparison to [Basset's] right to present his defense." Basset maintains that the court's denial of his request constituted an abuse of discretion, entitling him to reversal and a new trial.

¶ 51     The State contends Basset forfeited t this claim by not including it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (recognizing that both trial objection and written post-trial motion raising issue required to preserve alleged errors that could have been raised at trial). Basset argues that forfeiture does not apply because the claimed error implicates his constitutional right to present a defense, which need not be raised in a post-trial motion to be preserved. See *People v. Caffey*, 205 Ill. 2d 52, 90 (2001). Alternatively, he suggests that, we might address it under the plain-error doctrine even if the issue was forfeited.

¶ 52     The plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Basset contends that the court's ruling falls within the second prong of the plain-error doctrine, which applies when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). He additionally contends that, insofar as counsel's failure to preserve the claim caused its forfeiture, that failure constitutes ineffective assistance of counsel.

¶ 53     Regardless, to establish plain error, Basset must initially show that the trial court committed an error. *Thompson*, 238 Ill. 2d at 613 ("The first step of plain-error review is determining whether any error occurred. [Citation.]"). We find none.

¶ 54     "It is within the trial court's sound discretion as to whether a case may be reopened for further evidence, and unless that discretion is clearly abused, reversal will not result." *People v.*

*Collier*, 329 Ill. App. 3d 744, 749 (2002) (citing *People v. Figueroa*, 308 Ill. App. 3d 93, 101-02 (1999)); see also *People v. Beverly*, 364 Ill. App. 3d 361, 367 (2006) ("We review for an abuse of discretion a trial court's denial of a motion to reopen the evidence."). An abuse of discretion occurs "where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. [Citation.]" *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 55    The party seeking to reopen has the burden. *People v. Shore*, 129 Ill. App. 3d 443, 458 (1984). "A trial court in considering a motion to reopen proofs takes into account various factors, including the existence of an excuse for the failure to introduce the evidence at trial, *e.g.*, whether it was inadvertence or calculated risk; whether the adverse party will be surprised or unfairly prejudiced by the new evidence; whether the evidence is of the utmost importance to the movant's case; and whether there are the most cogent reasons to deny the request." *People v. Mandarino*, 2013 IL App (1st) 111772, ¶ 44 (quoting *Figueroa*, 308 Ill. App. 3d at 103).

¶ 56    Basset asserts that Knight would have given exculpatory testimony of the "utmost importance" to his defense. He points out that his counsel's opening statement indicated to the jury that they would hear that Basset "got into an argument with Stricker, that Stricker made the first physical contact when he grabbed [Basset] by the beard, and that both men were injured in the ensuing fight." Basset argues: "It is plain from the record that Knight, Basset's grandmother who was standing at her front door and saw the incident, was going to be the sole source of the promised evidence." We disagree.

¶ 57    It is hardly "plain" what testimony Knight would have offered since defense counsel did not make an offer of proof in conjunction with the request to reopen the proofs. See *Collier*, 329 Ill. App. 3d at 753 ("[F]or the trial court to have found that defendant's testimony was of such importance to warrant the reopening of his case, an offer of proof should have been presented

before the court ruled on his request or immediately thereafter."). In turn, we cannot assess the relative importance of Knight's testimony to Basset's case. See *id.* ("Given the lack of insight as to the character of his testimony and reasons for failing to present it during his case in chief, we cannot say that the trial court clearly abused its discretion when denying defendant's motion to reopen his case."). Basset essentially asks us to infer, based solely on counsel's opening statement, that Knight would have testified that Stricker was the initial aggressor. Accepting that premise engages in speculation, especially as defense counsel's opening statement did not mention Knight as a potential witness. We cannot assume that Knight's testimony would be consistent with counsel's argument.

¶ 58    Basset cites *People v. Goff*, 299 Ill. App. 3d 944 (1998), as an example of an abuse of discretion in denying a motion to reopen the proofs. In *Goff,* defense counsel made an offer of proof in conjunction with the motion to reopen that the defense witness "would substantially impeach [the State's eyewitness] on the material issues of whether she was at the scene * * * and whether she saw the shooting." *Id.* at 949. We reasoned that the denial of the motion to reopen "assured that the jury would not hear probative evidence concerning the presence of defendants and the primary witness against them at the crime scene." *Id.* In contrast, there was no offer of proof as to how Knight's testimony would contradict the State's witnesses or conform to defense counsel's opening statement.

¶ 59    Given the lack of indication as to the nature of Knight's expected testimony, Basset's arguments regarding other factors are unpersuasive. Without indicating what Knight's testimony would be, we cannot find abuse of discretion. In any event, the record does not suggest that consideration of other factors would demonstrate abuse of discretion. The record sheds little, if any, light on whether Knight's unavailability came about due to "inadvertence or calculated risk."

*Mandarino*, 2013 IL App (1st) 111772, ¶ 44. Basset maintains that it is likely that "Knight simply left the courthouse late in the afternoon in the belief that she would not be called that day." This amounts to conjecture.

¶ 60    We acknowledge that, since the State had a rebuttal witness prepared to testify on the day that the parties rested, the possibility of Knight's testimony seems to have been known by the State. We cannot determine from the record whether reopening the proofs for Knight's testimony would be prejudicial to the State, that is, whether the State would have been able to call its rebuttal witness. The State points out that, on the date the parties rested, the State's Attorney informed the court that its rebuttal witness was "unavailable tomorrow." When defense counsel moved to reopen the proofs the next day, the State indicated it had "released" the witness: "[w]e had a rebuttal witness, we informed the Court it would be hardship for at that time which to leave, if push came to shove we had to have this here. Since we released our rebuttal witness and to allow the defense to all their witness—[.]" Basset responds that these comments were "poorly transcribed," and suggests that the State's use of the phrase "if push came to shove" likely means "the State was indicating it could find and present its rebuttal witness with no unreasonable delay, perhaps even that day." Basset thus argues there would be no more than "minor inconvenience" to the State to reopen the proofs. But Basset's interpretation asks us to speculate regarding the State's intended meaning of the phrase "if push came to shove." Given the State's use of the word "hardship" in the same argument, it appears just as likely the State was suggesting that it would *not* be easy to recall the rebuttal witness.

¶ 61    In sum, the record lacks the substance of Knight's expected testimony, let alone indicate whether she would have testified consistently with defense counsel's opening statement. Further, the record does not illustrate the reason for defense counsel's failure to call Knight or whether the

State would have been able to call the rebuttal witness to avoid potential prejudice to its case. On the record before us, we cannot say that the trial court's denial of Basset's request to reopen the proofs was an abuse of discretion. Thus, we reject Basset's first claim of error.

¶ 62    As we have rejected Basset's claim of error regarding his motion to reopen the proofs, we need not additionally discuss whether plain error review applies. See *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 63    Similarly, we reject that trial counsel's failure to properly preserve this claim constitutes ineffective assistance of counsel. Alleging ineffective assistance requires proof of prejudice such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). As we have found, the trial court did not err in denying the motion to reopen the proofs, and Basset cannot demonstrate a reasonable probability the result would have differed had his trial counsel preserved that claim. Because Basset cannot demonstrate prejudice, he cannot show ineffective assistance of counsel.

¶ 64                                    *Issue of Sentencing*

¶ 65    We next turn to Basset's claim of error on the sentencing, in which he urges that the trial court abused its discretion in imposing the maximum term of seven years' imprisonment. Emphasizing his lack of criminal background and claiming steady employment before the incident, Basset argues that he had "strong rehabilitative potential." He suggests that the trial court improperly imposed the maximum sentence because he was absent from trial and sentencing and "because Stricker's injuries were serious." He claims that these factors did not "so overwhelmingly outweigh [his] rehabilitative potential that the court could have reasonably imposed the maximum

sentence." He requests reduction of his sentence or remand for a hearing "where the court may consider the events of the past 15 years" in resentencing him.

¶ 66    In setting forth this argument, Basset acknowledges that he did not preserve his sentencing challenge because he did not move to reconsider his sentence. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (to preserve claim of sentencing error, both contemporaneous objection and written postsentencing motion). Nonetheless, he requests that we review his sentencing argument under the first prong of the plain-error doctrine, which applies in the sentencing context when a "clear or obvious error occurred" and "the evidence at the sentencing hearing was closely balanced." *Id.* Again, the "first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613. Here, too, we find no error.

¶ 67    A trial court must impose a sentence that balances the seriousness of the offense and the defendant's rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In doing so, the court considers aggravating and mitigating factors including "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment and education." *Id.* The sentence imposed will not be reversed absent an abuse of discretion. *Id.* The reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Alexander*, 239 Ill. 2d 205, 213 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)).

¶ 68    Basset was convicted of aggravated battery of a senior citizen, a Class 2 felony subject to a sentencing range of three to seven years' imprisonment. 720 ILCS 5/12-4.6 (West 2004); 730 ILCS 5/5-8-1(a)(5) (West 2004). His sentence will be disturbed only on an affirmative showing it

was "at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *Knox*, 2014 IL App (1st) 120349, ¶ 46. Basset has not made that showing.

¶ 69    Emphasizing his lack of criminal background and his age ("only 28 years old" at time of offense), Basset argues that the trial court should have ascribed more weight to mitigating factors and less weight to aggravating factors, namely: (i) his absence from trial and sentencing and (ii) the seriousness of the offense. He asks this court to substitute its judgment for that of the trial court, which we cannot do, even if we would have assessed the relevant factors differently than the trial court. *Alexander*, 239 Ill. 2d at 214-14; *Stacey*; 193 Ill. 2d at 209.

¶ 70    Regarding his *in absentia* status, Basset acknowledges that the trial court could properly consider his absence from trial as an aggravating factor. See *People v. Sole*, 357 Ill. App. 3d 988, 994 (2005) (affirming sentence where trial court cited failure to appear for sentencing as aggravating factor); see also *People v. Williams*, 97 Ill. App 3d 394, 405 (1981) (absence indicates "disrespect for the law [citation] and * * * may be taken into account by the trial court at a hearing in aggravation and mitigation. Such conduct may reflect on a defendant's general moral character, which is a proper area of inquiry by the trial court. [Citations.]"). Nevertheless, Basset suggests that the trial court placed undue emphasis on that factor "without knowing more about the reasons for [his] absence." We disagree.

¶ 71    Although during sentencing the trial court said, "[defendant] thumbs his nose at the court," an apparent reference to his *in absentia* status, the record shows that the bulk of the comments concerned the "barbaric" and "unprovoked" nature of the attack and the severity of Stricker's injuries. In essence, the court's passing reference to Basset's absence does not represent an affirmative showing it gave undue emphasis to that aggravating factor to the extent the sentence varied with the purpose and spirit of the law. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 72    Rather, the record reflects that the court properly emphasized the seriousness of the attack in giving the maximum sentence. "The seriousness of an offense, and not mitigating evidence, is the most important factor in sentencing." *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. While Basset emphasizes his rehabilitative potential, rehabilitative potential "is not entitled to greater weight than the seriousness of the offense." *Alexander*, 239 Ill. 2d 205, 214 (2010). Similarly, Basset's lack of criminal background did not preclude a maximum sentence. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 ("court is not required to give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence. [Citations.]").

¶ 73    In arguing that the court overly emphasized the seriousness of Stricker's injuries, Basset argues that, under the statute, anyone convicted of aggravated battery of a senior citizen necessarily caused "great bodily harm" to the victim. 720 ILCS 5/12-4.6 (West 2004). He also suggests that Stricker's injuries "were not so aggravating as to justify the imposition of the maximum sentence." Basset's arguments are unpersuasive.

¶ 74    The record reflects ample support for the trial court's conclusion that Basset's attack on Stricker was particularly brutal and that the injury had permanent debilitating consequences. The trial testimony indicated that, after knocking Stricker to the ground by punching him in the face, Basset continued to kick him while he was still on the ground. Stricker's testimony and his victim impact statement indicated that he required surgery and months of physical therapy. Stricker also described ongoing difficulties with walking and other routine activities, as well as the negative emotional impact of the attack. Further, the trial court remarked from its observations of Stricker that he had a "very noticeable altered gait." We defer to the trial court's firsthand observations. See *Stacey*, 193 Ill. 2d at 209.

¶ 75    Finally, although the court was not required to "explicitly analyze each relevant factor or articulate the basis for the sentence imposed," *Knox*, 2014 IL App (1st), 120349 ¶ 46, the trial court's remarks reflect that it gave due consideration to mitigating and aggravating factors. The court explicitly noted that Basset lacked "any criminal history at all," yet found that the maximum sentence was warranted given Basset's "barbaric" attack and Stricker's "life-altering injuries." On the record, we cannot say that this was an abuse of discretion.

¶ 76    As we reject Basset's claim regarding his sentence, we need not discuss plain error. See *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 77    Affirmed.